The CITY OF HOMER, a Municipal Corporation, and John Lane, as its Finance Department Officer, Appellants and Cross-Appellees,

v.

Nicholas GANGL, d/b/a Bidarka Inn; Walt Kodiak and Thomas Todd, on behalf of themselves and all others similarly situated, Appellees and Cross-Appellants.

Nos. 5702, 5743.

Supreme Court of Alaska.

Sept. 17, 1982.

A. Robert Hahn, Jr., Hahn, Jewell & Stanfill, Anchorage, for appellants and cross-appellees.

Steve K. Yoshida, Price & Yoshida, Homer, for appellees and cross-appellants.

Andrew R. Sarisky, Borough Atty., and Joseph L. Kashi, Asst. Borough Atty., for amicus curiae Kenai Peninsula Borough.

Before BURKE, C. J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

CONNOR, Justice.

This case involves two appeals from a summary judgment which enjoined the enforcement of a hotel/motel room tax, or "bed tax," imposed by the City of Homer. At issue is the legality of this tax, the interpretation of its legislative authority, and the delineation of city and borough taxation powers and functions. We affirm the superior court's grant of summary judgment, as we find that the tax was a sales tax and, therefore, was invalid because it was imposed upon a single source.

## I. FACTS

The facts are not in dispute. On December 10, 1979, the Homer City Council adopted Ordinance No. 79–19. The ordinance provides for the levy of a tax on transient hotel/motel room rents equal to five percent of the room rental for the first seven days of occupancy.[1] As the Finance Officer of the city had been previously advised by Kenai Peninsula Borough officials that the borough would not collect the tax, the ordinance provides for collection by the city. The ordinance also provides that the transient guest is responsible for the payment of the tax to the operator of the hotel/mo-

1. The ordinance was adopted following a general municipal election held by the city in which the following proposition was included for voter consideration:

"Proposition No. 6—shall the City of Homer enact a five (5) percent tax on hotel/motel rooms and other commercial sleeping accommodations for the first seven days of occupancy; the proceeds of which shall be appropriated annually by the Council for the promotion of the tourist industry."

This proposition was approved by the voters of the city by a vote of 287 "yes" to 172 "no".

tel, and that the operator is to transmit these payments to the city.

At the time the ordinance was adopted, the City of Homer was a first class general law city situated in the Kenai Peninsula Borough. The borough at that time already levied a two percent sales tax for areawide borough functions on sales, services and rents, including the hotel/motel rents in the City of Homer. Similarly, the city at that time already levied a one percent sales tax on all sales, services and rents made within the city. The borough collected both the borough's two percent sales tax and the city's one percent sales tax.

On August 8, 1980, Nicholas Gangl (a motel owner in the City of Homer) and Walt Kodiak and Thomas Todd (two customers) [hereinafter plaintiffs] filed a complaint in superior court praying that the ordinance be declared illegal, that its enforcement be permanently enjoined, and that the monies collected under the ordinance be returned to those who paid the tax. On motion of the plaintiffs, the superior court rendered summary judgment against the city and both sides appeal.[2]

## II. THE CITY OF HOMER "BED TAX" IS A SALES TAX WITHIN THE MEANING OF AS 29.53.415(a) AND AS 29.53.440.

Homer Ordinance 79–19, Sec. 2, provides: "The tax shall be applicable to all transient room rentals and/or other commercial sleeping accommodations unless the rental is specifically exempted from taxation by law, said tax to be equal to 5% of the room rental for the first seven days of occupancy."

The superior court concluded that the bed tax imposed by the city is a sales tax and therefore subject to the statutory requirements and limitations on sales taxes. The

city argues that because the tax is not a "general" tax and because it is based upon actual occupancy, the tax is not a sales tax.

The statutory authority for the imposition of a sales tax by a borough provides the following sources of sales taxes:

"Sec. 29.53.415. *Sales and use tax.* (a) A borough may levy and collect a sales tax not exceeding three per cent on sales *or rents,* and on services made within the borough. The sales tax may apply to any or all of these sources . . . ." (emphasis added).[3]

Therefore, the legislature considered a tax on rents to be a sales tax. The statutory authority for the imposition of sales taxes by a city also considers rents to be a source of sales taxes:

"Sec. 29.53.440. *Power of levy.* Cities within a borough which levies and collects sales or use taxes for areawide borough functions may levy sales or use taxes upon *all sources* taxed by the borough in the manner provided for boroughs." (emphasis added).

Although traditionally the furnishing of lodging was not considered to be a sale of tangible property and not within the common law definition of a sales tax, the legislature in Alaska has specifically included rental transactions within its sales tax provisions. The statutory inclusion of a transaction prevails over the principles of common law. *International Bus. Machines Corporation v. Brown,* 167 Conn. 123, 355 A.2d 236, 241 (1974). Indeed, the city does not contend that the borough's two percent levy and the city's one percent levy already assessed on room rentals are not sales taxes. Similarly the city's five percent tax on the rental of hotel/motel rooms is a sales tax within the meaning of the sales tax statutes.

**2.** The summary judgment order declared the ordinance illegal, permanently enjoined its enforcement, and ordered the return of all taxes collected under it. The judgment was stayed pending final disposition of this appeal and taxes therefore continued to be collected under it. Apparently the city council did not renew the tax and the ordinance, therefore, expired

pursuant to its own terms. Therefore, the tax was collected only from April 1, 1980, to April 1, 1981.

**3.** This statute was amended in 1980 to increase the maximum rate to six percent. (Am. § 3 ch. 127 SLA 1980).

Other incidents of this tax, including its computation, collection and payment, indicate that it is a sales tax. Although the term "sales tax" is not defined beyond the listing of its sources in AS 29.53.415(a), the traditional sales tax is computed by applying a constant rate to the value of the commodity or service transferred or exchanged. 68 Am.Jur.2d, Sales and Use Taxes § 1 (1973). Therefore, the computation of the bed tax (a constant rate of five percent applied to the rental price of seven days) is that traditionally used in sales taxes. That the value is limited to the rent for seven days does not alter the nature of the computation. Further, as the borough points out, the system used in collecting the tax (from the consumer to the operator to the city, with penalties for failure to collect or remit) is analogous to the payment and collection of the borough's two percent and the city's one percent sales taxes.

The city's arguments, that the hotel/motel room tax is not a "general" tax and that it is based only upon the actual occupancy of the room, provide further persuasion for its classification as a sales tax. The city incorrectly assumes that a "sales or use tax places general taxation on any sources of sales, rents or services within the borough." We have previously noted that the term "sales tax" carries no such connotation of generality, and that selective sales taxes by boroughs are not unusual. *Liberati v. Bristol Bay Borough,* 584 P.2d 1115, 1123 (Alaska 1978). One of the hallmarks of a sales tax is that it taxes the actual transaction involved; *i.e.,* it is not until the sale, rental, or provision of services takes place that the tax is imposed. This distinguishes a sales tax from a license or privilege tax, which is a sum exacted for the privilege of carrying on an occupation in general, rather than any particular exercise of this privilege. *See generally* 2A C. Antieau, Municipal Corporation Law § 21.80, at 21–134 (1982).

In conclusion, the Homer bed tax, based upon the actual rental of a room, and imposed, computed and collected according to traditional sales tax methods, falls within the statutory provisions regarding sales taxes, and is, therefore, subject to their requirements and limitations.

## III. AS 29.53.440 REQUIRES THE CITY TO LEVY A SALES TAX ON EVERY SOURCE ALREADY TAXED BY THE BOROUGH OR NONE AT ALL.

The superior court, having concluded that the ordinance is a sales tax levy made pursuant to AS 29.53.440, found that this statute requires that the levy be made

"on all the very same sources that the borough levies sales tax on all at the same time. The city can't pick and choose. If the borough levies sales tax on Items 1 through 10, the city can't say well, we're only going to choose Item 7 and levy a sales tax on that ... it's got to levy them on Items 1 through 10, or not at all."

Under this restriction the superior court concluded the tax is illegal because it is imposed solely upon the specific source of hotel/motel rents, and not upon all sources taxed by the borough. We agree.

 The text of the statute supplies this limitation on city sales tax levies, especially when contrasted with the text of the borough sales tax statute. AS 29.53.415(a), set forth above, states that a borough may tax *any or all* of the listed sources within the borough. In contrast, AS 29.53.440 states that a city may tax *all* sources taxed by the borough. If "all" means the same thing as "any or all," then the words "any or" in AS 29.53.415(a) are superfluous. As we have previously stated, we should not presume that the legislature has used superfluous words. *City and Borough of Juneau v. Thibodeau,* 595 P.2d 626 (Alaska 1979). Thus, the superior court's interpretation of the contrasting language in these sections, as requiring a city to tax all of the sources taxed by the borough if it imposes a sales tax, is sound.

 The legislative history of AS 29.53.440 provides further support for this construction, and was the foundation for the

superior court's determination.[4] Title 29 is the 1972 recodification of the Municipal Code previously embodied in Titles 7 and 29. A conference committee report, which noted the substantive changes this recodification entailed, was submitted to the legislature by the committee in June 1972. The report's purpose was two-fold:

> "In addition to serving as a useful comparison of existing laws and the revised code, the report is offered to reflect legislative intent where the intent expressed and the pertinent code provisions are consistent."

1972 House Journal 1718. With regard to the city sales tax provisions the report stated:

> "If a borough levies and collects sales or use taxes on an areawide basis, cities within the borough which levy such taxes within their boundaries *must levy upon the same sources* as are taxed by the borough and in the same manner as the borough (Sec. 29.53.440). (The *uniformity* requirement is an addition to present law.)" (emphasis added).

1972 House Journal 1726.

This desire for uniformity can best be understood by a brief historical analysis of the evolution of local government in Alaska and its constitutional framework.[5] The Alaska Constitution clearly states its philosophy on local government:

> "The purpose of this article is to provide for maximum local self-government with a minimum of local government units, and to prevent duplication of tax-levying jurisdictions."

Alaska Const. art. X, § 1. In an attempt to simplify local government and prevent the overlapping of governmental functions, the framers of the constitution (and, in particular, the Committee on Local Government) considered establishing a single unit of local government with the abolition of cities altogether.[6] Although the committee felt that a completely unified local government structure had very definite advantages, it was also considered a concept whose time had not yet come. Section 2 of Article X presents the compromise solution: "All local government powers shall be vested in boroughs and cities. The state may delegate taxing powers to organized boroughs and cities only." However, these two units of government were not to be disparate and competing, but were intended to cooperate and collaborate.[7] Along with the joint ser-

---

4. The city argues that the superior court should not have considered the legislative history, as the intent of the legislature is evident from the "clear and concise" language of the statute. We have already rejected the so-called plain meaning rule as a strict exclusionary rule in favor of a sliding scale approach, where the plainer the language of the statute, the more convincing contrary legislative history must be. *State v. Alex,* 646 P.2d 203 (Alaska 1982); *State v. City of Haines,* 627 P.2d 1047, 1049 n.6 (Alaska 1981). Therefore, the superior court properly considered the legislative history and the weight given to it was not in error, as the history is consistent with the language of the statute, not contrary to it.

5. *See generally* R. Cease and J. Saroff, The Metropolitan Experiment in Alaska, A Study of Borough Government (1968); and V. Fischer, Alaska's Constitutional Convention (1975).

6. *See* V. Fischer, Alaska's Constitutional Convention at 121 (1975).

7. A member of the Committee on Local Government offered the following explanation to the convention delegates:

> "Our whole concept has been based, not upon a separation of the two basic units of government, the borough and the city, but as close an integration of functions between the two as is possible. It was felt, for instance, that we should not, definitely not follow the pattern that you find in most stateside counties where you have the exactly same functions being carried out separately at these two levels of government with their own hierarchy of officialdom and separate capital investment. It was our thought that wherever functions overlap that they should be integrated, and from that standpoint it was the Committee's feeling that if we can get the coordination between the city council and the borough assembly we would be able to achieve the maximum amount of cooperation because then each would best know what the other had to offer, they would realize what the problems of the other were, and you would force them, almost, into the cooperation that we hope to achieve in our local government."

4 Proceedings of the Alaska Constitutional Convention 2625 (January, 1956).

vice of city council members on the legislative bodies of both the city and the borough, other provisions were included with the intent of encouraging integration between cities and boroughs.[8]

In one area in particular, that of property taxation, a delegate expressly recognized a need for uniformity:

> "I think you can have better government at less expense by correlating the taxing activities and channeling them through one body with one set of appraisers, one set of collectors, one set of condemners and tax sale experts, and having that money go into one fund for distribution by a general body elected by all of the people no matter what level of government we operate at."

4 Proceedings of the Alaska Constitutional Convention 2703 (January, 1956). The legislature responded to that lack of uniformity in the Borough Act of 1961, which provided for an areawide assessment and collection of real and personal property taxes by the borough. *See* former AS 07.15.310 and .320.

However, conflicts continued to exist between boroughs and cities in the assessment and collection of sales taxes. The desire for uniformity expressed in the committee report on the 1972 revision of the sales tax provisions is consistent with the earlier legislation integrating borough and city property tax functions. Thus, in the interest of uniformity the superior court correctly construed the contrasting language of AS 29.-53.415(a) and AS 29.53.440 as meaning that if the city levies a sales tax, it must tax all of the sources already taxed by the borough.

The city argues at length that under the framework established for the analysis of municipal legislation, municipalities in Alaska have the "unfettered power of taxation unless clearly and specifically prohibited by statute, with all conflicts and inconsistencies in language resolved in the favor of the municipalities." It is undisputed by the plaintiffs and the borough that a liberal construction should be given to the powers of local government, general law as well as home rule municipalities.[9] We believe that construing the statute to require uniformity in taxation of sources by borough and city units does not offend the rule of liberal construction, and reconciles the goals of maximum local government and minimum overlapping of local government units articulated in Article X, section 1.

■ The city also argues that even if it must tax on no less than *all* the sources taxed by the borough, the bed tax meets this criterion because rents are already taxed by the borough. The city urges that the only difference is one of rate rather than one of source. Although the city tries to diminish the difference here between its general sales tax and its bed tax, we find this semantic distinction unpersuasive. The differential rate in effect makes this tax a selective tax. It clearly imposes a burden on one transaction that is not imposed on any other. Additionally, the tax was not levied pursuant to the vote on the general sales tax, but after a special proposition

---

**8.** *See, e.g.,* Article X, § 13, which provides for agreements for cooperative or joint administration of any functions or powers among local governments, and for the voluntary transfer of functions from a city to a borough.

**9.** Article X, § 1 of the Alaska Constitution provides in part:

> "A liberal construction shall be given to the powers of local government units."

The state legislature has repeated this mandate:

> "Sec. 29.48.310. *General Construction.* A liberal construction shall be given to all powers and functions of boroughs and cities conferred in this title.

> Sec. 29.48.320. *Extent of powers.* Unless otherwise limited by law, boroughs and cities have and may exercise all powers and functions necessarily or fairly implied in or incident to the object or purpose of all powers and functions conferred in this title.

> Sec. 29.48.330. *Enumeration of powers.* Specific examples within an enumerated power or function conferred upon boroughs or cities in this title are illustrative of the object and not a limitation on or exclusion from the exercise of the power or function."

In *Liberati v. Bristol Bay Borough,* 584 P.2d 1115, 1122 (Alaska 1978), we expressly held that this liberal construction applies to general law as well as home rule municipalities.

vote. The city bed tax is clearly selective and, therefore, violates the requirement of uniformity.

In conclusion, the superior court did not err in concluding that AS 29.53.440 requires a city to uniformly tax all the sources taxed by the borough, and that the city's bed tax violates this requirement.[10]

AFFIRMED.

---

10. As we have determined that the Homer bed tax was illegal, we need not consider the arguments concerning the power of the city to collect the tax or the statutory limitations on the sales tax rate.