C. Walter EBELL and Hartig Rhodes, Norman, Mahoney and Edwards, a professional corporation, Petitioners,

v.

SEAPAC FISHERIES, INC.; Seapac Sales, Ltd.; and William H. Hilborn, Respondents.

No. S–134.

Supreme Court of Alaska.

Dec. 14, 1984.

Marc D. Bond, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for petitioners.

John Suddock, Libbey, Suddock & Hart, Anchorage, for respondents.

Before BURKE, C.J., RABINOWITZ, MATTHEWS, and COMPTON, JJ.

OPINION

MATTHEWS, Justice.

The question presented in this petition for review is whether the superior court acted properly in denying defendants' motion for a change of venue from the Second Judicial District to the Third Judicial District.

The statutory section that governs venue in cases not involving real property is AS 22.10.030(b), which provides: "If ... a defendant can be personally served within a judicial district of the state, the action against that defendant shall be commenced in that judicial district or in the judicial district in which the claim arose."

William Hilborn, a Canadian resident, sought legal advice for himself and his two corporations from C. Walter Ebell of the law firm of Hartig, Rhodes, Norman, Mahoney & Edwards. According to the complaint, Ebell negligently failed to advise Hilborn of the necessity of compliance with the Fisheries Conservation Management Act of 1976, resulting in the seizure of Hilborn's vessels in Norton Sound in the Second Judicial District. The vessels were ordered to Dutch Harbor in the Third Judicial District. Eventually, the herring on board the vessels was forfeited and other losses were incurred.

Hilborn and the corporations filed suit in the Second Judicial District for damages resulting from Ebell's omission. Ebell and the law firm were served with summons and complaint in the Third Judicial District. Both Ebell's residence and the law firm's principal place of business lie within the Third Judicial District.

The court denied defendants' motion to change venue, noting that while the alleged negligence may have occurred in the Third Judicial District, "the injury occurred in the Second Judicial District and thus for the purposes of AS 22.10.030(b) the claim arose in the Second Judicial District." We affirm.

AS 22.10.030(b) was enacted in 1971. Prior to its enactment, actions not concern-ing real property could be brought in any judicial district. In enacting AS 22.10.-030(b), the legislature limited venue but stated: "It is the intent of this act to make the administration of justice more accessible to people of rural areas of the state." Section 3, ch. 126 SLA 1971. Plaintiffs were not limited to filing suit in the district where the defendants resided or where the defendants could be found; they could also file suit in the district "in which a claim arose."

In 1966, "claim arose" language was added to 28 U.S.C. § 1391(a) and (b), extending venue in the federal courts to "the judicial district ... in which the claim arose." Similar language is also present in the venue statutes of several of our sister states. *See* Ill.Ann.Stat. ch. 110, ¶ 2-101 (Smith-Hurd 1984); Kan.Stat.Ann. § 61-1902(3)(1983); Miss.Code Ann. § 11-11-3 (1972); Ohio R.Civ.Pro. 3(B)(6) (1982); Or. Rev.Stat. § 14.080(1) (1983); Tenn.Code Ann. § 20-4-101(a)(1980); Utah Code Ann. § 78-13-7 (1977).

When AS 22.10.030(b) was enacted in 1971, the "claim arose" language had a generally understood meaning in the context of tort suits.[1] A claim for tort arose where the last event necessary to make the defendant liable for the tort took place. The last event occurred when the harmful force, set in motion by the defendant's negligence, first took effect on the body or the property of the plaintiff.[2] Thus, a claim for tort arose where the harmful force first took effect, or where the plaintiff suffered injury. The place where the plaintiff suffered his injury has been used by many courts to determine when the "claim arose"

---

**1.** *See Rosen v. Savant Instruments, Inc.,* 264 F.Supp. 232, 236–37 (E.D.N.Y.1967); *Kroger Co. v. Adkins Transfer Co.,* 284 F.Supp. 371, 377 (M.D.Tenn.1968); *Alabama Great Southern Railroad Co. v. Allied Chem. Co.,* 312 F.Supp. 3, 9 (E.D.Va.1970), *rev'd on other grounds,* 467 F.2d 679 (5th Cir.1972); *cf. Austin v. Fulton Ins. Co.,* 444 P.2d 536, 539 (Alaska 1968) ("A tort is ordinarily not complete until there has been an invasion of a legally protected interest of the plaintiff"); Restatement, Conflict of Laws § 377,

at 454–57 (1934) (summarizing rules for determining "the Place of Wrong" in various tort situations).

**2.** *See Illinois v. City of Milwaukee,* 599 F.2d 151, 156–57 (7th Cir.1979), *vacated on other grounds,* 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981); *Maney v. Ratcliff,* 399 F.Supp. 760, 766–67 (E.D.Wis.1975).

for venue purposes and has been referred to as the "place of injury" rule.[3]

 When a phrase has acquired a generally understood meaning, it is presumed, in the absence of circumstances pointing to a different conclusion, that the legislature intends to convey that meaning.[4] Since there are no indicia of a contrary intent, we conclude that the "claim arose" language in AS 22.10.030(b) as applied to tort suits was meant to include the place of injury rule. In the present case the harmful force first took effect when the vessels were seized in the Second Judicial District. Therefore, it is appropriate to say that the Second Judicial District is a district in which the claim arose.

In reaching this conclusion we are aware that there has developed what has been

called a "weight of the contacts" approach to determine where a claim arose. This approach originated in an anti-trust case in 1968[5] and has been applied in other anti-trust and complex litigation since that time.[6] Recently, it has been utilized in tort suits.[7]

 We do not reject the "weight of the contacts" approach in all respects. As applied in tort suits it ordinarily,[8] though not always,[9] results in venue at the place of injury. To the extent, however, that the approach is keyed to seeking the one forum that has the most significant contacts, rather than any forum with substantial contacts,[10] it seems to produce much litigation.[11] Under Alaska law, arguments

---

3. See, e.g., Annot., 59 A.L.R.Fed. 320, 329–33, 367 (1982); cf. Grappone, Inc. v. Subaru of America, Inc., 403 F.Supp. 123, 133 (D.N.H. 1975) (place of injury should be given great weight in weighing contacts to determine venue).

4. State, Dept. of Rev. v. Debenham Elec. Supply Co., 612 P.2d 1001, 1002 (Alaska 1980). AS 01.10.040 provides:
 Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage. Technical words and phrases and those which have acquired a peculiar and appropriate meaning, whether by legislative definition or otherwise, shall be construed according to the peculiar and appropriate meaning.

5. Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp., 291 F.Supp. 252, 260–61 (E.D.Pa.1968). The test was formulated as follows:
 It is submitted that "where the claim arose" should be dependent upon where the contacts weigh most heavily. A "weight of the contacts" test would enable venue to exist in a district where the injury occurred, if significant sales causing substantial injury were made to plaintiffs there by defendants. If some other overt act pursuant to the conspiratorial meetings took place in a district and it was a significant and substantial element of the offense, then venue would lie in that district. Conversely, if one significant sale was made in a district, ... venue would not lie there. Similarly, if a meaningless and insignificant meeting of the conspirators took place in a certain district, venue would not exist there either.

6. See generally 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3806,

at 35–36 nn. 27, 28 (1976). These authors comment: "Neither the cases announcing this test, however, nor those that have applied it have shed light on how contacts are weighed or when they are significant, nor on what contacts should be weighed in cases in fields other than antitrust." Id. at 36.

7. See Manatee Cablevision Corp. v. Pierson, 433 F.Supp. 571, 577 (D.D.C.1977); Turner v. Pemberton, 558 F.Supp. 1065, 1069 (D.S.C.1983); cf. Restatement (Second) of Conflict of Laws § 145, at 414–29 (1971) (stating contacts to be considered in determining what state's law is applicable to various tort situations).

8. Some courts have stated that in tort cases the place of injury should be the most heavily weighted contact. See, e.g., Iranian Shipping Lines, S.A. v. Moraites, 377 F.Supp. 644, 647–49 (S.D.N.Y.1974); Glendale Federal Sav. & Loan Ass'n v. Fox, 481 F.Supp. 616, 623–24 (D.Cal. 1979).

9. See, e.g., Turner v. Pemberton, 558 F.Supp. 1065 (D.S.C.1983).

10. See ABC Great States, Inc. v. Globe Ticket Co., 310 F.Supp. 739, 743 (N.D.Ill.1970); Cheeseman v. Carey, 485 F.Supp. 203, 210–14 (S.D.N.Y. 1980). See generally, 1 J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, Moore's Federal Practice ¶ 0.142[5.–2], at 1431–35 (2d ed. 1984); cf. Lamont v. Haig, 590 F.2d 1124, 1133–34 (D.C.Cir.1978); Transamerica Corp. v. Transfer Planning Inc., 419 F.Supp. 1261, 1263 (S.D.N.Y.1976) (adopting the substantial contacts approach).

11. See 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3806, at 28–29

about where a lawsuit can best be tried can be made under AS 22.10.040.[12] Focusing the parties' attention on the statutory guidelines for changing venue will be more productive than attempting the often imponderable task of enumerating and quantifying contacts in an effort to fulfill the "occasionally fictive"[13] quest for the one district in which the claim arose. Thus, we disapprove of the weight of the contacts approach only insofar as it assumes that there is but one district in which a claim may arise.

The order of the superior court is AFFIRMED.

n. 18 (1976); American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, at 137 (1968).

12. AS 22.10.040 states:
 The superior court in which the action is pending may change the place of trial in an action from one place to another place in the same judicial district or to a designated place in another judicial district for any of the following reasons:
 (1) when there is reason to believe that an impartial trial cannot be had;
 (2) when the convenience of witnesses and the ends of justice would be promoted by the change;
 (3) when for any cause the judge is disqualified from acting, but if the judge of another judicial district is assigned to try the action, no change of place of trial need be made;
 (4) if the court finds that the defendant will be put to unnecessary expense and inconvenience, and if the court finds that the expense and inconvenience was intentionally caused, the court may assess costs against the plaintiff.

13. The quoted phrase is taken from *LeRoy v. Great Western United Corp.,* 443 U.S. 173, 184, 99 S.Ct. 2710, 2716, 61 L.Ed.2d 464, 474 (1979).