**Mike O'CALLAGHAN, Appellant,**

**v.**

**STATE of Alaska, Lieutenant Governor Steve McAlpine, in his official capacity of Director of Elections, John B. ("Jack") Coghill, Appellees.**

No. S–4227.

Supreme Court of Alaska.

March 6, 1992.

Mike O'Callaghan, in pro per.

Edgar Paul Boyko, Boyko, Breeze & Flansburg, Anchorage, and Marjorie L. Odland, Asst. Atty. Gen. and Charles E. Cole, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

---

## OPINION

BURKE, Justice.

Mike O'Callaghan appeals the superior court's grant of summary judgment in favor of the Director of Elections and Jack Coghill, arguing that Coghill was a "disqualified" candidate under AS 15.25.110 and that the Director of Elections unlawfully placed his name on the 1990 general election ballot. The single issue which we address is whether AS 15.25.110 prohibits a person's name from appearing on the general election ballot when that person withdraws as a candidate for one political party to accept another party's nominating petition. We conclude that AS 15.25.110 does not prohibit a candidate who withdraws from having his or her name placed on the ballot as the candidate for a different political party. Consequently we affirm the superior court's grant of summary judgment.

### I

In the 1990 state primary election, Jack Coghill sought and won nomination as the Republican party's lieutenant governor candidate. John Lindauer and Jerry Ward won the primary election nominations as the Alaska Independence Party's (hereafter AIP) governor and lieutenant governor candidates. Mike O'Callaghan was also a candidate for governor on the Political Party ticket.

Initially Coghill joined Arliss Sturgulewski, the Republican governor candidate, to form the Republican party ticket. However, on September 19, 1990, just before the statutory 48–day deadline, Coghill withdrew as the Republican candidate and joined Walter Hickel to form the new ticket for the AIP. Earlier that same day, Lindauer and Ward had withdrawn as the AIP candidates, apparently to create a vacancy so that the AIP central committee could nominate Hickel and Coghill by party petition.

On September 28, 1990, O'Callaghan filed a complaint against the Director of Elections, then Lt. Governor Steve McAlpine, seeking a temporary restraining order to prohibit McAlpine from printing Coghill's name on the general election ballot as the AIP's lieutenant governor candidate. Judge Michalski denied this request. Coghill then moved to intervene in the case, and his motion was granted. O'Callaghan petitioned the court for a hearing on the proper interpretation of AS 15.25.110. The trial court chose to treat the petition as a motion for summary judgment. Coghill and the Director cross-moved for summary judgment.

Argument at the summary judgment hearing focused exclusively on the proper interpretation of AS 15.25.110. The court denied O'Callaghan's summary judgment motion, but granted the cross-motion filed by Coghill and the Director after concluding that AS 15.25.110 did not bar Coghill from appearing on the ballot. This appeal followed.[1] While the appeal was pending,

---

1. O'Callaghan argues for the first time in his appellant brief that Coghill and Hickel's names should not have been placed on the ballot because they were not members of the AIP and did not pay a $100.00 filing fee when they accepted nomination under the AIP's party petition. These arguments were not raised at the trial level nor were they included in the points on appeal. We will not review new arguments or points of error that were neither raised before the trial court nor included in the points on appeal unless the issue presented is "1) not dependent on any new or controverted facts; 2) [is] closely related to the appellant's trial court arguments; and 3) could have been gleaned from the pleadings, or if failure to address the issue would propagate plain error." *Sea Lion Corp. v. Air Logistics of Alaska,* 787 P.2d 109, 115 (Alaska 1990).

Although these new arguments are not dependent on any controverted facts, they could not have been gleaned from O'Callaghan's complaint nor were they closely related to the statutory construction issue argued below. O'Callaghan never questioned the procedure Coghill employed to fill the AIP vacancy. At one point during the hearing, he stated:

> I have no problem with Mr. Coghill filing to fill the vacancy of the AIP. What I have the problem with is the Division of Elections putting his name on the ballot by virtue of that petition.

The filing fee and the party affiliation arguments are clearly a new and different attack on Coghill's candidacy. O'Callaghan also attacks the legitimacy of Gov. Hickel's candidacy, a party who is not involved in this appeal. Basic due process considerations mandate that we not

Jack Coghill and Walter Hickel's names were placed on the ballot, and they were elected to office in the November 6, 1990 general election.

## II

O'Callaghan argues that a candidate who has "withdrawn" his name from one party's nomination is "disqualified" under AS 15.25.110 and cannot have his name placed on the general election ballot as the candidate of any party. The statute provides:

> *If a candidate nominated at the primary election dies, withdraws, resigns, becomes disqualified from holding the office for which the candidate is nominated, or is certified as being incapacitated in the manner prescribed by this section after the primary election and 48 days or more before the general election, the vacancy may be filled by party petition.* The central committee of any political party or any party district committee may certify as being incapacitated any candidate nominated by their respective party by presenting to the director a sworn statement made by a panel of three licensed physicians, not more than two of whom may be of the same political party, that the candidate is physically or mentally incapacitated to an extent that would in the panel's judgment prevent the candidate from active service during the term of office if elected. The director shall place the name of the person nominated by party petition on the general election ballot. *The name of a candidate disqualified under this section may not appear on the general election ballot.*

entertain these arguments for the first time on appeal.

**2.** We interpret this statute using our independent judgment. *Wien Air Alaska, Inc. v. Dep't of Revenue,* 647 P.2d 1087, 1090 (Alaska 1982) ("As repeatedly noted by our court, it is within the court's special competency to independently interpret a statute.").

**3.** Alaska Const. art. III, § 2 provides the governor's qualifications. "The governor shall be at

AS 15.25.110 (1991 Supp.) (emphasis added). O'Callaghan maintains that a candidate is "disqualified under this section" when he or she "dies, withdraws, resigns, becomes disqualified from holding the office for which the candidate is nominated, or is certified as being incapacitated." *Id.* Under his interpretation, the Director of Elections is prohibited from placing a candidate's name on the ballot as a candidate for any office if the candidate creates a vacancy under the statute.

This question is purely a matter of statutory construction.[2] The goal of statutory construction is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 905 (Alaska 1987). We will construe the words in a statute in accordance with their common usage unless they have acquired a peculiar meaning through statutory definition or judicial construction. *Wilson v. Municipality of Anchorage,* 669 P.2d 569, 571–72 (Alaska 1983); *see also* AS 01.10.-040 (Supp.1991).

The words "qualifications" and "disqualified" are used in several places in the election code. *See* AS 15.05.010, AS 15.05.-011, AS 15.15.210, AS 15.25.056, and AS 15.25.110. Except for the challenged usage in AS 15.25.110, it is perfectly apparent that the words are used to refer to the statutory or constitutional qualifications for voters or candidates; namely age, citizenship, and residency.[3] The uniform usage of the term "disqualified" throughout the act (up to and including the first sentence of AS 15.25.110) creates a strong presumption that the legislature was using the word in the same way in the last sentence of the section.[4] Under this interpre-

least thirty years of age and a qualified voter of the State. He shall have been a resident of Alaska at least seven years immediately preceding his filing for office, and he shall have been a citizen of the United States for at least seven years." Art. III, § 7 provides that the lieutenant governor "shall have the same qualifications as the governor."

**4.** *See Chugach Natives, Inc. v. Doyon, Ltd.,* 588 F.2d 723 (9th Cir.1978) (when the same words or phrases are used in different parts of a stat-

tation, Coghill, who withdrew but retained the qualifications of office, was properly placed on the general election ballot.

However, O'Callaghan contends that the legislature intended to give "disqualified" a different meaning in the last sentence of AS 15.25.110. He argues that the sentence specifically refers to disqualification "under this section" whereas the other uses of the term do not. He also points out that the last sentence was added as part of the 1962 amendment along with the language concerning incapacitation. The precursor to AS 15.25.110 was the 1960 session law, § 5.11 which stated in pertinent part:

> If any candidate nominated at the party primary nomination dies, withdraws, or becomes disqualified from holding office for which he is nominated after the primary nomination and 10 days or more before the general election, the vacancy may be filled by party petition. The secretary of state shall place the name of the person nominated by party petition on the general election ballot or if the general election ballot has been prepared, the secretary of state ... shall prepare, print, and distribute a sufficient number of gummed labels or stickers bearing the name of the candidate to fill the vacancy ... with instructions that the election judges shall place one of the stickers or labels on the appropriate place on each ballot before the ballot is handed to the voter.

Ch. 83, SLA 1960. The 1962 amendment added the underlined portions to § 5.11:

> If any candidate nominated at the party primary nomination dies, withdraws, *re-*

*signs,* becomes disqualified from holding office for which he is nominated, *or is certified as being incapacitated in the manner prescribed by this section after the primary election and 10 days or more before the general election, the vacancy may be filled by party petition. The central committee of any political party or any party district committee may certify as being incapacitated any candidate nominated by their respective party by presenting to the secretary of state a sworn statement made by a panel of three licensed physicians, not more than two of whom shall be of the same political party, that the candidate is physically or mentally incapacitated to an extent that would in his judgment prevent the candidate from active service during the term of office if elected.* ... before the ballot is handed to the voter. *The name of any candidate disqualified under the provisions of this section shall not appear on the general election ballot.*

Am. ch. 125, § 18, SLA 1962. O'Callaghan argues that "disqualified under the provisions of this section" must have been intended in its broadest sense because "provisions" is plural not singular.

▪ O'Callaghan's argument has some merit since, under our rules of statutory construction, we presume that the legislature has not used superfluous words. *See City of Homer v. Gangl*, 650 P.2d 396, 399 (Alaska 1982). The 1962 amendment is troubling and makes the subsection ambiguous.[5] We agree with O'Callaghan that

---

ute they are presumed to carry the same meaning throughout). We adopted a similar rule in *Ebell v. Seapac Fisheries, Inc.*, 692 P.2d 956 (Alaska 1984). "When a phrase has acquired a generally understood meaning, it is presumed, in the absence of circumstances pointing to a different conclusion, that the legislature intends to convey that meaning." *Id.* at 958.

**5.** What makes AS 15.25.110 so ambiguous is that the last sentence refers to a "candidate disqualified under this section" but the preceding sentences do not clearly define how or when a candidate is to be considered "disqualified." In fact, the section does not obviously disqualify any candidate. The term "disqualify" means

"[t]o divest or deprive of qualifications; to incapacitate." Black's Law Dictionary 472 (6th ed. 1990). The first sentence of AS 15.25.110 merely lists the five ways a vacancy may be created which may, in turn, be filled by party petition. The second sentence, however, does involve what could be considered a disqualifying process in that an outside body is stripping a candidate of the opportunity to participate in the election. Therefore it is possible that the phrase "disqualified under the provisions of this section" may have been an inappropriate reference to the incapacitation provisions that were added in the same 1962 amendment. However, for the reasons that follow, we do not adopt this interpretation.

the legislature intended "disqualified under this section" to broadly include all five means of creating a vacancy. However, we conclude that this sentence is merely an instruction to the Director to eliminate from the ballot the name of a candidate who no longer desires or is no longer qualified to seek office as a candidate of the party for which he or she was nominated. This type of instruction occurs throughout the election code and is designed to delete, if time permits, the names of nonviable candidates from the ballot so that they will not distract voters or draw votes from viable candidates. *See* AS 15.25.055; AS 15.-25.200; *see also* AS 15.25.056. The last two sentences of AS 15.25.110, read together, support this interpretation:

> The director shall place the name of the person nominated by party petition on the general election ballot. The name of a candidate disqualified under this section may not appear on the general election ballot.

Thus, the names of Ward and Lindauer, who withdrew as AIP candidates, may not appear on the ballot as viable candidates *of the AIP*, and Coghill's name may not appear on the ballot as a candidate *of the Republican party*. However, it is not necessary to conclude that these candidates could not appear on the ballot as candidates of another party if they accepted that party's nominating petition. Jack Coghill did just that.

■ We consider this to be the most reasonable interpretation of AS 15.25.110 because it prevents a candidate from appearing on the ballot as the candidate of two different political parties.[6] This construction also protects against two different candidates' names appearing on the ballot as the candidate for the same political party. We have previously stated that constitutional provisions should be given a reasonable and practical interpretation in accordance with common sense. *Kochutin v. State*, 739 P.2d 170, 171 (Alaska 1987). This sentiment is equally applicable to statutory construction. Accordingly, we hold that, under AS 15.25.110, a candidate nominated at the primary election who "dies, withdraws, resigns, becomes disqualified from holding office for which the candidate is nominated, or is certified as being incapacitated" is prohibited from having his or her name placed on the general election ballot as the candidate of the party for

---

**6.** Our interpretation is consistent with the legislature's recently expressed willingness to permit candidates to change parties so long as dual candidacies are prevented. The legislature amended the election code in 1989. AS 15.25.-030(a)(14) formerly read:

> The declaration shall state in substance ... that the person is not a candidate for any other office to be voted on at the primary or general election and that the candidate has not filed another nominating petition or declaration of candidacy for the office for which this [declaration/petition] is filed.

The 1989 amendment changed this section to read:

> The declaration shall state in substance ... that the person is not a candidate for any other office to be voted on at the primary or general election and that the person is not a candidate for this office under any other declaration of candidacy or nominating petition.

AS 15.25.030(a)(14) (Supp.1991). AS 15.25.-180(a)(14), a related provision, was similarly amended. This change was explained by Sen. Pourchot, the amendment's sponsor:

> Sen. Pourchot explained that some candidates switch parties and then file for the same office. Taken literally, no candidate could withdraw or change his declaration even before

the cutoff date. This section rewords the provision to clarify that a candidate may have filed previous declaration of candidacy for the same office, but there is not a dual filing. Sen. Pourchot noted that this was done to take into account the situation where a candidate files by a petition under one party and then withdraws and files by petition under a different party. The effect of this provision is to allow people to legitimately withdraw from an office or switch parties and refile for the same office, but not allow people to file simultaneous declarations for the same office.

House Judiciary Committee, Minutes of Meeting held April 19, 1989.

The Senator's comments certainly indicate that the legislature was unconcerned with candidates doing exactly what Jack Coghill did, at least during the period before the primary. Each subsection of the election code should be construed in light of every other subsection to create a harmonious whole. *Anchorage v. Scavenius*, 539 P.2d 1169, 1174 (Alaska 1975). Therefore the 1989 amendment supports our conclusion that dual candidacies are prohibited by AS 15.25.110, but that the statute does not prohibit a candidate from withdrawing as the nominee of one party to accept another party's nominating petition.

which he or she was nominated at the primary election.[7]

Despite O'Callaghan's claims to the contrary, there is nothing in the legislative materials to suggest that the legislature meant to prevent a candidate who withdraws after the primary election from being placed on the ballot as the candidate of another party.[8] The focus of the subsection is to outline the procedures for filling vacancies. We have adopted an interpretation of the statute which best serves that purpose. *See Commercial Fisheries Entry Comm'n v. Apokedak*, 680 P.2d 486, 489–90 (Alaska 1984) (in ascertaining the meaning of a statute, the primary guide is the language used, construed in light of the purpose of the enactment).

It is quite likely that the legislature never contemplated the turn of events that occurred in the 1990 election. Therefore it is not surprising that the election code fails to clearly address the policy concerns raised by O'Callaghan during oral argument before this court.[9] However, given our clear policy favoring open access to the ballot, it would be incongruous for us to now stretch to find a prohibition against Coghill's candidacy when the election code does not clearly prohibit it. *See Vogler v. Miller*, 660 P.2d 1192 (Alaska 1983); *Warwick v. State ex rel. Chance*, 548 P.2d 384 (Alaska 1976) (restrictions on those who may run for office impinge on the right to vote).

The superior court's order is AFFIRMED.

7. Obviously a candidate who dies, becomes disqualified or is found to be incapable of holding office will not be placed on the ballot as a candidate of another party. Therefore, practically speaking, only withdrawal or resignation will permit a candidate to seek office under a new political party after the primary election.

8. Given the ambiguity of AS 15.25.110, it would be most helpful to discover a clear historical record of the legislature's purpose in adding this sentence to the subsection. *See Alaska Public Emp. Ass'n v. State*, 525 P.2d 12, 14 (Alaska 1974) (when statute ambiguous, it is necessary to examine legislative history of the statute as well as its policy and purpose). Unfortunately, there is virtually no existing legislative history on either the 1960 or 1962 versions of § 5.11, the predecessor to AS 15.25.110. According to a 1960 memorandum, the only extant history of

the 1960 enactment, the section was originally designed to establish a procedure for filling a vacancy caused by death, withdrawal, or disqualification by party petition. *See* Alaska Legislative Council, Memorandum to Members of Legislature (January 20, 1960). There are no existing legislative materials for the crucial 1962 amendment.

9. Among other things, O'Callaghan hypothesized that two lieutenant governor candidates could conspire to steal the election by withdrawing at the last moment from their respective tickets (leaving their running mates statutorily ineligible to seek the governor's office) and joining on a new political party ticket as the sole viable candidates. While this is a legitimate policy concern, we are convinced that other statutory and judicial remedies are available to protect the electorate against such an eventuality.