**Mike LAGOS and Mei Fong Lagos, Individually, and d/b/a Marina Restaurant, House of Liquors, Inc. d/b/a House of Liquors, an Alaska corporation; and Pioneer Liquor, Inc., d/b/a Pioneer Bar, an Alaska corporation, Appellants,**

v.

**CITY AND BOROUGH OF SITKA, Appellees.**

**No. S–4136.**

Supreme Court of Alaska.

Dec. 27, 1991.

William G. Royce, Anchorage, for appellants.

Theron J. Cole, Sitka, for appellees.

Barbara J. Blasco, Juneau, for amicus curiae, City and Borough of Juneau.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

### I. FACTS AND PROCEEDINGS

This appeal raises the question of the validity of 4.08.040 of the Sitka General Code. This ordinance provides,

A consumer sales tax is levied on all sales made in the City and Borough of Sitka at the rate of 4% of the selling price. An additional 4% consumer sales tax is placed upon the sale of alcoholic beverages. Normally the burden of this tax rests upon the consumer.

In 1989, the City and Borough of Sitka ("Sitka") had amended this ordinance to include the additional tax on alcoholic beverages in response to a ballot proposition passed by voters on October 3, 1989. The ballot proposition also provided for "the resulting revenue to be dedicated toward the prevention and treatment of alcohol and drug abuse in Sitka." Just prior to the election, appellants, as owners of business and businesses which sold alcoholic beverages, ("Lagos") filed a complaint for declaratory judgment and injunctive relief, seeking to have the ballot proposition invalidated.

Lagos alleged that the ballot proposition and the ordinance were unlawful on three grounds:

(1) AS 04.21.010(c) prohibits taxing alcoholic beverage sales at a rate higher than the tax on other sales;

(2) The regulation and taxation of alcohol has been preempted by state law except where such power is specifically conferred on municipalities; and

(3) A municipal tax purporting to dedicate resulting revenues violates Article IX, § 7, of the Alaska Constitution.

Lagos filed for summary judgment on the first ground, that Sitka's sales tax was illegal under AS 04.21.010(c). This statute provides,

A municipality may not impose taxes on alcoholic beverages except

(1) property taxes on alcoholic beverage inventories;

(2) sales taxes on alcoholic beverage sales if sales taxes are imposed on other sales within the municipality; and

(3) sales taxes on alcoholic beverage sales that were in effect before July 1, 1985.

Lagos read subsection two of this statute to ban discriminatory sales tax rates on alcoholic beverages. In this regard he argued that the legislative history of AS 04.21.010(c) showed that the legislature intended to ban discriminatory rates when it enacted AS 04.21.010(c)(2).

Sitka filed its own motion for summary judgment, requesting the superior court to dismiss Lagos' complaint for declaratory and injunctive relief. Sitka argued that none of the contentions advanced by Lagos raised any "issue as to any material fact and that [Sitka] is entitled to judgment as a matter of law."

The superior court granted summary judgment in favor of Sitka. The court thought Lagos' legislative history argument unpersuasive, and concluded that "[h]ad uniformity in rates of taxation been intended, the language of the legislation could easily have been written to say so.... Some legislators may have opposed a requirement for uniform rates." The superior court did not address Lagos' remaining preemption and unconstitutional dedication arguments. This appeal followed.[1]

## II. DISCUSSION

In this appeal Lagos raises the same arguments against Sitka's differential alcoholic beverage sales tax as were urged before the superior court.

A. *Does AS 04.21.010(c) prohibit taxing sales of alcoholic beverages at a higher rate than other commodities?*

AS 04.21.010(c)(2) authorizes municipalities to impose a "sales tax on alcoholic beverages if sales taxes are imposed on other sales within the municipality." Lagos interprets this provision to mean "that

---

1. The parties agree that this appeal does not raise any issues of fact, but rather concerns the interpretation of statutes. This court will employ *de novo* review to a grant of summary judgment, *Kollodge v. State,* 757 P.2d 1028, 1032 (Alaska 1988), and will adopt the rule of law which is "most persuasive in light of precedent, reason and policy." *Langdon v. Champion,* 745 P.2d 1371, 1372 n. 2 (Alaska 1987) (citations omitted).

sales taxes on alcoholic beverages are allowed only to the extent sales taxes are imposed on other sales."[2]

We have stated that the goal of statutory construction is:

> [T]o give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others. In this respect, we have repeatedly stated that unless the words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage.

*Tesoro Alaska Petroleum Co. v. Kenai Pipeline Co.*, 746 P.2d 896, 905 (Alaska 1987).

 We do not adhere to the plain meaning rule in interpretation of statutes. *University of Alaska v. Geistauts*, 666 P.2d 424, 428 n. 5 (Alaska 1983). However, we have stated that "where a statute's meaning appears clear and unambiguous, ... the party asserting a different meaning has a correspondingly heavy burden of demonstrating contrary legislative intent." *Id. See also State v. Alex*, 646 P.2d 203, 208 n. 4 (Alaska 1982) (under Alaska's sliding scale approach to statutory interpretation, the plainer the language of the statute the more convincing the evidence of contrary legislative intent must be). In interpreting a statute, we look first to the language of the statute. *Ward v. State*, 758 P.2d 87, 89 n. 5 (Alaska 1988). Here, the language of the statute, on its face, proscribes imposition of a sales tax solely on alcohol. It does not explicitly address rates of taxation.

### 1. The legislative history

The language requiring a municipality to tax sales of other commodities before taxing sales of alcoholic beverages was added to AS 04.21.010(c) in 1985. Ch. 74, § 20, SLA 1985. Similar language had been deleted from the statute in 1980.[3] Ch. 131, § 4, SLA 1980.

Lagos argues that the legislative history supports his interpretation of the 1985 amendments to AS 04.21.010(c). Senator Eliason sponsored the amendment to AS 04.21.010(c), and the Senate Finance Committee deliberated over the merits of the amendment. In proceedings before the Senate Finance Committee, Senator Eliason asked Senator Ray to "testify on the background of this particular amendment." Proceedings of the Senate Finance Committee, May 8, 1985 ("Proceedings") (testimony of Senator Eliason). Senator Ray testified as to his involvement with the 1980 recodification of the code dealing with alcoholic beverages. He noted that the 1980 elimination of the language in the amendment was inadvertent. He then stated, "[i]n fact, two or three years after the bill had passed when ... Juneau ... considered adding an additional tax, it surprised me immensely, and I´ said, 'Well, they can't do that.'" *Id.* Senator Ray went on to explain, "It would seem to me it would be discriminatory to have an additional tax on anything." *Id.* Because Ju-

---

**2.** Before the superior court Lagos argued in part:

> If one restricts the analysis to the language amending (c)(2), one may argue (as Sitka does) that the statute allows Sitka to tax alcoholic beverages at any rate, so long as sales taxes are imposed on some other sales within the municipality. It is true that (c)(2) contains no discussion regarding the *rate* of taxation on alcoholic beverage sales. Thus, so long as the analysis is restricted to (c)(2), one could argue (as Sitka does) that municipalities are free to single out sales of alcoholic beverages for taxation at a rate greater than taxes imposed on other sales. Others could argue with *equal* convincing force that sales taxes on alcoholic beverages are allowed *only to the extent sales taxes are imposed on other sales*

> *within the municipality*—thus requiring an equality of rate.
> Thus, it is necessary to consider the meaning and intended effect of (c)(3) adopted as part of the 1985 amendment....

(Emphasis in original.)

**3.** The original language read, "nor shall any municipality impose taxes other than property taxes on liquor inventories and sales taxes on liquor sales when such taxes are levied on other property and sales within the community." Ch. 86, § 1, SLA 1960. Apparently, the language requiring taxes on all commodities was inadvertently eliminated when the code was revised in 1980. *See* Senate Finance Comm. Proceedings, May 7, 1985 (testimony of Sen. Eliason); *id.*, May 8, 1985 (testimony of Senator Ray).

neau did in fact enact a tax which taxes sales of alcohol at a higher rate than it taxes other commodities, Lagos concludes that Senator Ray was interpreting the missing language to prohibit enactment of differential sales taxes on sales of alcohol.

After listening to Senator Ray's testimony, Senator Eliason explained,

The only limitations we're imposing on local governments is the fact that they cannot take a specific sales tax on a specific industry. What we're saying is that if you want to tax liquor and whatever else you might want to tax, that's alright. But we want to—it's keeping any specific industry—going out and point and saying, "We're going to tax you and no one else." ... They can ... impose a ten percent tax on liquor and tobacco—that wouldn't be in violation of this provision.... If the proposition read, "Shall we impose a ten percent tax on tobacco only?" they couldn't under this provision.

*Id.* Earlier in the proceedings, Senator Eliason had stated,

Under this language, no they can't discriminate between alcohol or food or clothing or any other commodity that's sold in the market. Its reasoning being that the state does regulate very stringently the alcoholic program in Alaska, so that's what the intent of the legislation is to treat them all equally.

*Id.* This history suggests that both senators intended to eliminate differential rates of taxation on sales of alcohol.

Additional support for Lagos' position is found in a comment by Senator Ferguson. At the May 7, 1985 proceedings of the Senate Finance Committee, Senator Fergu-

son asked, "Dillingham is thinking about raising the taxes on alcohol, and would they be allowed to continue their movement? I guess they wouldn't be able to after July 1, 1985?" *Id.* Senator Kerttula in response stated that "[a]s long as their ordinance is fully implemented prior to July 1st, they would be grandfathered in." *Id.* Apparently, both these senators believed that the amendment in question prohibited differential rates on alcohol sales tax.

Subsequently, at the same May 7, 1985 Senate Finance Committee meeting, the strongest statement concerning the subject of differential rates of taxation was made by the then Acting Commissioner of the Department of Community & Regional Affairs, in response to the comment by Senator Ferguson. The Acting Commissioner stated, "I understand then in the amendment that this refers to tax equalization and you cannot set a sales tax for alcohol higher than any other commodity within the community." [4] *Id.*

Sitka counters by noting that

the Lagos' are relying upon the statements of individual legislators made in a single committee. There are no committee findings, no report, no journal entries, no indication that the whole legislature knew of or considered the statements or even considered anything beyond the words of the amendment that was part of a much larger bill.... Since there is no indication that the statements made in the committee were before the legislature, the legislature's intent must be presumed to be that expressed in the words of the statute.[5]

Sitka, and the amicus, also rely on an opinion from an Assistant Attorney Gener-

---

**4.** After hearing the testimony of the Acting Commissioner, the committee then questioned the drafter of the amendment, Tamara Cook (of the legislative affairs committee staff). She stated, "[a]s I read this language, if a municipality, whether it be a city or a borough, in fact imposed a sales tax on anything other than alcohol, it would be free to then also include alcohol within its sales tax structure." Proceedings, May 7, 1985.

**5.** The amicus, City and Borough of Juneau, argues in part as follows:

Under the statute, a preexisting sales tax on alcoholic beverages was "grandfathered" regardless of whether the tax was part of a two-tiered sales tax system (such as Juneau's sales tax on alcoholic beverages) or part of a single-tiered system which imposed a tax on the sales of alcoholic beverages only. Thus, the *only* sales tax system proscribed by the statute is one which would impose a tax on the sales of alcoholic beverages only *and* which was not in effect before July 1, 1985.
(Emphasis in original.)

al and a memorandum from the then Deputy Director of the Division of Legal Services for the Legislative Affairs Agency, both of which concluded that the 1985 amendment to AS 04.21.010(c) did not speak to the rate of taxation.[6]

### 2. The effect of AS 04.21.010(c)(3)

Lagos further argues that the grandfather clause of AS 04.21.010(c)(3), which permits the continuation of "sales taxes on alcoholic beverage sales that were in effect before July 1, 1985," demonstrates that the legislature intended to prohibit differential rates of taxation when it enacted its amendments to AS 04.21.010(c). Lagos asserts that this grandfather clause applied to the communities of Craig, Juneau, and Kotzebue, because those communities had in place differential taxes on the sale of alcoholic beverages at the time the 1985 amendments were enacted. Additionally, Lagos points to the discussions of the Senate Finance Committee which indicate that the committee believed these three communities were the only communities affected by the grandfather clause. From a review of the legislative history of the amendment to AS 04.21.010(c)(3), and the differential sales tax ordinances of Juneau, Craig, and Kotzebue, Lagos concludes that AS 04.21.-010(c)(3) was enacted for the specific purpose of preserving the two-tiered municipal sales taxes on alcohol in these three communities. Thus, Lagos concludes that any ambiguity as to whether AS 04.21.010(c)(2) prohibits discriminatory rates of taxation on sales of alcoholic beverages is resolved by the provisions of AS 04.21.010(c)(3).

The City and Borough of Sitka reply that there is no indication in the wording of AS 04.21.010(c)(3) that it is limited to instances of unequal taxation or that it is limited to the communities of Craig, Juneau, and Kot-

zebue. "It could just as easily be applied to communities taxing alcohol alone prior to July 1, 1985."

### III. CONCLUSION

Our review of the merits leads us to the conclusion that Lagos' position is the more persuasive one. We therefore hold that the Sitka ordinance which taxes the sales of alcoholic beverages at a 4% higher rate than sales made on other commodities within the City and Borough of Sitka is violative of AS 04.21.010(c).

The text of AS 04.21.010(c)(2) is ambiguous in that it fails to clearly indicate whether it prohibits the imposition of discriminatory rates of sales taxes on sales of alcoholic beverages. On the other hand, the text of AS 04.21.010(c)(3) and the relevant legislative history concerning this 1985 amendment to AS 04.21.010(c), indicate that the legislature intended its amendments to prohibit the imposition of discriminatory sales taxes, whether in the form of sales tax rate differentials or a sales tax imposed solely on the sale of alcoholic beverages.[7] Thus, we conclude that AS 04.21.010(c)(2) and AS 04.21.010(c)(3) when read together, bar a municipality from taxing only the sale of alcoholic beverages and further require that if sales taxes are imposed on other commodities then the rate of taxation on the sale of alcoholic beverages may not exceed the rate of taxation imposed upon such other commodities sales.

REVERSED.[8]

---

**6.** In support of its reliance on these two documents Sitka cites *State, Dep't of Natural Resources v. City of Haines*, 627 P.2d 1047, 1049 nn. 6 & 7 (Alaska 1981) and *Carney v. State, Bd. of Fisheries*, 785 P.2d 544, 548 (Alaska 1990) ("Opinions of the Attorney General, while not controlling on matters of statutory interpretation are entitled to some deference.").

**7.** In addition to the text and legislative history surrounding the adoption of AS 04.21.010(c)(3),

the legislative history of AS 04.21.010(c)(2) noted above, provides evidence that some members of the Senate Finance Committee, including the amendment's sponsor, intended that there be no discrimination in a municipality's rate of taxation concerning alcoholic beverages.

**8.** Our holding that the ordinance in question is unlawful makes it unnecessary to address any of the remaining issues in this appeal.