INTERIOR CABARET, HOTEL,
RESTAURANT & RETAILERS
ASSOCIATION, Appellant,

v.

FAIRBANKS NORTH STAR
BOROUGH, Appellee.

No. S–11481.

Supreme Court of Alaska.

May 12, 2006.

Peter J. Aschenbrenner, Aschenbrenner Law Offices, Inc., Fairbanks, for Appellant.

Joseph W. Miller, Assistant Borough Attorney, and A. René Broker, Borough Attorney, Fairbanks, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Interior Cabaret, Hotel, Restaurant & Retailers Association (ICHRRA) sued the Fairbanks North Star Borough to challenge a proposed sales tax on alcoholic beverages on theories the tax would be illegal and the ballot question was misleading. The borough then changed the proposed tax and the ballot question and voters approved the proposal. ICHRRA amended its complaint and challenged the enacted tax. Does the tax's exemption for two cities within the borough mean that the tax is not "areawide," as AS 29.35.150 requires? Is the tax the borough's only sales tax, in violation of the policy embodied in AS 04.21.010(c)(2), which is intended to prevent discriminatory taxation of alcoholic beverage sales? And is ICHRRA the prevailing party, given the changes the borough made before submitting the proposal to the voters?

Despite the exemptions, we hold that the tax is areawide. We also hold that the tax does not discriminate against sales of alcoholic beverages, because the borough also imposes a sales tax on hotel rooms. Finally, we hold that it was not an abuse of discretion to find that ICHRRA was not the prevailing party. We therefore affirm the judgment below.

## II. FACTS AND PROCEEDINGS

The Fairbanks North Star Borough Assembly in July 2003 enacted Ordinance 2003–46, which proposed a referendum imposing a sales tax on sales of alcoholic beverages. The proposed ballot question asked: "Shall the Fairbanks North Star Borough levy an areawide 5% tax on the retail sale of alcoholic beverages with limited exemptions for alcoholic beverage sales taxed by the City of Fairbanks and the City of North Pole, thereby reducing the property tax dollar for dollar?" Ordinance 2003–46 contained an implementing ordinance that would become effective if voters approved the proposed tax.

ICHRRA filed suit on August 8 to prevent the proposed question from being placed on the October 7 election ballot. ICHRRA alleged that the ballot question was misleading and that Ordinance 2003–46 proposed an invalid tax. On August 22 the superior court denied ICHRRA's motion for a preliminary injunction to prevent Ordinance 2003–46's question from appearing on the ballot. The

borough assembly then enacted Ordinance 2003–52, which replaced Ordinance 2003–46. The ballot question, as stated by Ordinance 2003–52, asked: "Shall the Fairbanks North Star Borough levy an areawide 5% tax on the retail sale of alcoholic beverages with limited exemptions for alcoholic beverage sales to the extent taxed by the City of Fairbanks and the City of North Pole?" Borough voters approved this proposed tax.

ICHRRA then amended its complaint, alleging that the tax violates state law on the theories the tax is not "areawide," as AS 29.35.150 requires, and is a discriminatory sales tax on alcoholic beverages, in violation of AS 04.21.010(c)(2). The superior court granted summary judgment to the borough. The court found that ICHRRA was a public interest litigant and was therefore not liable to the borough for attorney's fees, but also declined to award ICHRRA prevailing party attorney's fees under the catalyst theory.

ICHRRA appeals the superior court's grant of summary judgment in favor of the borough and its ruling that ICHRRA was not the prevailing party.[1]

## III. DISCUSSION

### A. Standard of Review

 "Summary judgment is appropriate where 'there is no genuine issue as to any material fact and ... any party is entitled to judgment as a matter of law.'"[2] We review grants of summary judgment de novo.[3] We draw all factual inferences in favor of, and

view the facts in the light most favorable to, the party against whom summary judgment was granted.[4] When interpreting statutes we use a sliding-scale approach, under which the clearer the statutory language is, the more convincing legislative history must be to justify another interpretation.[5] We give "liberal construction ... to the powers of local government units."[6]

 We review for abuse of discretion the superior court's prevailing party determination when awarding attorney's fees.[7] Prevailing party determinations will ordinarily be overturned only if they are manifestly unreasonable.[8]

### B. The Sales Tax Authorized by Ordinance 2003–52 Is "Areawide" Within the Meaning of AS 29.35.150.

 Alaska Statute 29.35.150 requires that borough taxing power be exercised on an "areawide" basis.[9] "Areawide" is defined by AS 29.71.800(1) to mean "throughout a borough, both inside and outside all cities in the borough."

When this dispute arose, AS 29.45.650(a) provided that

> Except as provided in AS 04.21.010(c), AS 29.45.750, and in (f), (h), (i), and (j) of this section, a borough may levy and collect a sales tax on sales, rents, and on services provided in the borough. The sales tax may apply to any or all of these sources. Exemptions may be granted by ordinance.[10]

1. The borough has filed a separate appeal from the superior court's ruling that ICHRRA is a public interest litigant. *See Fairbanks N. Star Borough v. Interior Cabaret, Hotel, Rest. & Retailers Ass'n,* Supreme Court Case No. S–11612.

2. *West v. Umialik Ins. Co.,* 8 P.3d 1135, 1137 (Alaska 2000) (quoting Alaska R. Civ. P. 56(c)).

3. *Rockstad v. Erikson,* 113 P.3d 1215, 1219 (Alaska 2005).

4. *Id.*

5. *Bartley v. State, Dep't of Admin., Teachers' Ret. Bd.,* 110 P.3d 1254, 1258 (Alaska 2005) (noting that "under Alaska's sliding-scale approach to statutory interpretation, the plainer the language of the statute, the more convincing contrary leg-

islative history must be") (internal quotation marks omitted).

6. Alaska Const. art. X, § 1.

7. *Cont'l Ins. Co. v. U.S. Fid. & Guar. Co.,* 552 P.2d 1122, 1125 (Alaska 1976), *disapproved on other grounds by Farnsworth v. Steiner,* 638 P.2d 181, 185 n. 5 (Alaska 1981).

8. *Jerue v. Millett,* 66 P.3d 736, 740 (Alaska 2003).

9. AS 29.35.150 requires boroughs to "exercise the powers as specified and in the manner specified in AS 29.35.150—29.35.180 on an areawide basis." AS 29.35.170(a) authorizes boroughs to "assess and collect" sales taxes.

10. In 2005 the legislature amended AS 29.45.650(a) to provide that "[a] borough may wholly or partially exempt a source from a bor-

ICHRRA argues that "[a] borough sales tax is cumulative, not incorporating, reduced or sliding to take account of the rate of city sales taxation," and that Ordinance 2003–52's exemption of alcoholic beverage sales to the extent they are taxed by cities within the borough renders the tax illegal as not "area-wide."

Alaska Statute 29.71.800(14) defines "nonareawide" to mean: "throughout the area of a borough outside all cities in the borough." Because a borough could attempt to exercise its powers in some, but not all, cities within the borough, the terms "areawide" and "nonareawide" as defined by AS 29.71.800(1) and (14) are not mutually exclusive. That is, not every exercise of borough power that is not "areawide" is necessarily "nonareawide." We therefore consider whether the borough's sales tax on alcoholic beverages is "not area-wide."

ICHRRA argues that the tax is not area-wide because Ordinance 2003–52 defined the exemptions by geography. ICHRRA similarly argues that the juxtaposition of the terms "levy" and "collect" in various statutes [11] prohibits the borough from collecting "sales taxes in some parts of the borough but not others." These arguments are unavailing. Ordinance 2003–52 and the implementing ordinance define exemptions in terms of any applicable city sales taxes rather than by geography. Ordinance 2003–52's ballot question asked whether sales should be exempted "to the extent taxed by the City of Fairbanks and the City of North Pole." The implementing ordinance likewise exempts retail sales of alcoholic beverages "to the extent that [they] are taxed by any other municipality within the borough" and exempts wholesale sales "by a bona fide alcoholic beverage distributer." [12]

The words of AS 29.45.650(a) indicate that boroughs have broad power to create exemptions. The second sentence of AS 29.45.650(a) authorizes boroughs to apply a sales tax "to any or all" of the "sources" listed in the first sentence. The second sentence therefore allows taxes on sales, rents, and services. The legislature's use of "any or" in addition to "all" indicates that boroughs may be selective in determining which "sources" to tax. [13] We interpret statutes "so that no part will be inoperative or superfluous, void, or insignificant." [14] This principle suggests that the third sentence in AS 29.45.650(a) ("Exemptions may be granted by ordinance.") is intended to authorize boroughs to grant exemptions on some basis other than "source," because the second sentence in that subsection gives boroughs authority to tax sources selectively, without reference to the third sentence. [15] Furthermore, AS 29.45.650(a) does not purport to limit boroughs' powers to grant exemptions, and "[w]e should not be quick to imply limitations on the taxing authority of a municipality where none are expressed." [16]

We also note that AS 29.45.650(c) mandates an exemption from borough *use* taxes to the extent "the person has paid a sales tax on the source" when the sales tax was "levied in any taxing jurisdiction whether inside or outside the state." Therefore, if a borough

---

ough sales tax that is taxed by a city in that borough under AS 29.45.700." *See* ch. 30, § 1, SLA 2005. The statute as amended would thus explicitly allow the tax proposed by Ordinance 2003–52 as against an areawide objection such as ICHRRA raises here. The amendment to subsection .650(a) became effective on August 24, 2005. Ch. 30, SLA 2005. The version of AS 29.45.650(a) quoted in the text therefore controls this case. For ease of discussion, we will refer to the version quoted in the text and applicable here as "AS 29.45.650(a)."

**11.** *See* AS 29.35.170(a); AS 29.45.650(a); AS 29.45.660(a); AS 29.45.700(a), (b).

**12.** Fairbanks North Star Borough Ordinance (FNSBO) 3.59.040(A)-(B).

**13.** *See City of Homer v. Gangl*, 650 P.2d 396, 399 (Alaska 1982) ("If 'all' means the same thing as 'any or all,' then the words 'any or' ... are superfluous.") (interpreting predecessor to AS 29.45.650(a)).

**14.** *City of St. Mary's v. St. Mary's Native Corp.*, 9 P.3d 1002, 1008 (Alaska 2000) (internal quotation marks omitted).

**15.** *See Gangl*, 650 P.2d at 399 ("We have previously noted that the term 'sales tax' carries no such connotation of generality, and that selective sales taxes by boroughs are not unusual.") (citing *Liberati v. Bristol Bay Borough*, 584 P.2d 1115, 1123 (Alaska 1978)).

**16.** *Liberati*, 584 P.2d at 1121.

levies a five percent use tax on a commodity, but a city within the borough has already levied a five percent sales tax on the sale of that commodity, AS 29.45.650(c) exempts the borough's use tax in its entirety. Yet this would not mean that the borough's use taxes are not areawide. Here, the tax's exemptions operate in the manner described in AS 29.45.650(c). We therefore conclude that the exemptions do not mean that the tax is not areawide.

ICHRRA argues that Ordinance 2003–52 "has tied the hands of the local lawmakers," in alleged violation of our holding in *City of St. Mary's v. St. Mary's Native Corp.*[17] ICHRRA correctly points out that the exemptions in Ordinance 2003–52 may have made the sales tax more palatable to some voters; it argues that because borough voters approved both the tax and the exemptions, repeal of or reduction in the exemptions would be a new tax or an increase in the rate of levy. ICHRRA reasons that the assembly therefore cannot repeal the exemptions without voter approval. This, ICHRRA argues, is a violation of the separation of powers because it takes budget authority away from the assembly and places it in the hands of the voters. ICHRRA also argues that Ordinance 2003–52 violates separation of powers principles and delegates taxing power to city governments by "committ[ing] the Assembly to honor both the City of Fairbanks'[s] and the City of North Pole's power to raise taxes *out of the Borough's share.*" (Emphasis in original.)

In *St. Mary's* we concluded that "when a local government grants an exemption by ordinance and the exemption is not subjected to a public vote, it may repeal that exemption by ordinance without a public vote."[18] The negative implication of this statement may be that when exemptions are approved by public vote, they may not be repealed by a mere ordinance. But the statement from *St. Mary's* quoted above does not suggest that exemptions may not be approved by public vote, or that repealing exemptions as part of the tax scheme would violate separation of powers principles.

Moreover, AS 29.45.650(a) provides that "[e]xemptions *may* be granted by ordinance." (Emphasis added.) The use of the permissive term "may" suggests that ordinances are not the sole means by which exemptions may be granted.[19] We therefore do not read AS 29.45.650(a) as either precluding the adoption through referendum of a sales tax with exemptions or mandating that repeal of an exemption adopted in this manner would require voter approval.[20] We see no separation of powers problem with an areawide tax that includes voter-approved exemptions that require voter approval for repeal.

Nor do we conclude that the tax violates separation of powers principles by delegating taxing authority to the cities. ICHRRA correctly points out that under the current exemptions, the borough's portion of the tax will be decreased if cities within the borough raise their sales taxes on alcoholic beverages. ICHRRA therefore implies that city councils may increase their sales taxes on alcoholic beverages to the level of borough taxation at no political cost because the increase would not affect the total tax paid by constituents. But boroughs have broad power to craft exemptions,[21] and whether the exemptions should hinge on the application of city sales

---

17. *City of St. Mary's v. St. Mary's Native Corp.,* 9 P.3d 1002 (Alaska 2000).

18. *St. Mary's,* 9 P.3d at 1007–08.

19. *See Kiokun v. State, Dep't of Pub. Safety,* 74 P.3d 209, 214 (Alaska 2003) (holding that statute stating Department "may" organize search party when person is lost is permissive and does not require search). *But cf. Whitson v. Municipality of Anchorage,* 608 P.2d 759, 761 (Alaska 1980), interpreting former AS 29.53.170, which has since been repealed. *See* ch. 74, § 88, SLA 1985. Former AS 29.53.170(a) provided that the assembly's power to impose a property tax *"shall* be

exercised by means of general ordinances." (Emphasis added.) *Whitson* held that a proposed amendment to the Anchorage Municipal Charter that would have required voter approval of any new property tax or an increase in the rate of levy "contradict[ed] the command of AS 29.53.170[] that taxes shall be levied by general ordinance." *Whitson,* 608 P.2d at 761.

20. Because the assembly has not attempted to repeal these exemptions, we need not decide here whether it could do so without voter approval.

21. *See supra* notes 15–17 and accompanying text.

taxes is a policy question for the borough. Because the legislature has not expressly limited the boroughs' taxing powers to preclude this type of exemption,[22] we decline to imply such a limit.[23]

As justification for the exemptions, the borough asserts that it and the cities may not impose "double" taxation on any transaction; it therefore contends that Ordinance 2003–52's exemptions are required. Because we conclude that the tax is "areawide," we need not consider this contention. But we observe that article X, section 1 of the Alaska Constitution merely announces a purpose of preventing the "duplication of tax-levying jurisdictions." It is not a per se prohibition on "double taxation." Furthermore, AS 29.45.700(a) specifically contemplates "double taxation" by providing that "[a] city in a borough that levies and collects areawide sales and use taxes may levy sales and use taxes on all sources taxed by the borough in the manner provided for boroughs." "Double taxation" therefore does not appear to be expressly proscribed by either the Alaska Constitution or "sound public policy," as the borough suggests.

ICHRRA also argues in passing that the borough's tax regime creates an "impossible administrative burden of dealing with two tax regimes on the same transaction with two tax collecting authorities." Fairbanks North Star Borough Ordinance (FNSBO) 3.59.040(A)(3) requires merchants within cities to collect a five percent sales tax on all sales of alcoholic beverage, and remit the borough's portion to the borough and the city's portion, if any, to the city. This is not on its face an "impossible administrative burden," and ICHRRA has not attempted to make the showing necessary to demonstrate burdensomeness. Nor has it suggested to us any basis in Alaska law for invalidating a tax because of the administrative burden the tax places on merchants.

We therefore conclude that the sales tax on alcoholic beverages as proposed in Ordinance 2003–52 and implemented in FNSBO 3.59.010–.180 is "areawide." We next consider whether the sales tax on alcoholic beverages is valid under AS 04.21.010(c)(2).

**C. The Sales Tax Authorized by Ordinance 2003–52 Is Not a Discriminatory Tax on Alcoholic Beverages, in Violation of AS 04.21.010(c)(2).**

Alaska Statute 04.21.010(c)(2) prohibits municipalities from imposing a sales tax on alcoholic beverages unless "sales taxes are imposed on other sales within the municipality." ICHRRA argues that "a tax on a single [other] commodity" is insufficient under AS 04.21.010(c)(2) to allow the borough to impose a sales tax on alcoholic beverages. ICHRRA also argues that even if a sales tax on a single other transaction may satisfy AS 04.21.010(c)(2), the borough's tax on hotel room transactions is not a qualifying tax.

**1. Alaska Statute 04.21.010(c)(2) requires a sales tax on only a single source other than alcoholic beverages.**

When interpreting statutes we use a sliding-scale approach, under which the clearer the statutory language is, the more convincing legislative history must be to justify another interpretation.[24] The text of AS 04.21.010(c)(2) does not clearly indicate how many other sources must be taxed before a tax on alcoholic beverages is permitted. The legislature's use of the plural term "sales taxes" suggests a requirement that more than one other source must be taxed before AS 04.21.010(c)(2) allows a tax on sales of alcohol. But the legislative history indicates that AS 04.21.010(c)(2) requires that only one other source be taxed. We discussed this legislative history in *Lagos v. City & Borough of Sitka.*[25]

**22.** Indeed, after ICHRRA filed suit, the legislature amended AS 29.45.650(a) to allow boroughs to craft exemptions based on the application of city taxes. *See supra* note 10.

**23.** *See Liberati v. Bristol Bay Borough,* 584 P.2d 1115, 1121 (Alaska 1978) ("We should not be quick to imply limitations on the taxing authority of a municipality where none are expressed.").

**24.** *Bartley v. State, Dep't of Admin., Teachers' Ret. Bd.,* 110 P.3d 1254, 1258 (Alaska 2005).

**25.** *Lagos v. City & Borough of Sitka,* 823 P.2d 641 (Alaska 1991) (holding that AS 04.21.010(c) prohibits taxing sales of alcoholic beverages at rate higher than other commodities).

In 1980 the legislature inadvertently deleted from the statute then governing borough taxation powers language similar to that now found in AS 04.21.010(c)(2).[26] The legislature realized this mistake and enacted AS 04.21.010(c)(2) in 1985.[27]

Senator Eliason, one of the 1985 legislation's sponsors, stated that "[u]nder this language, no they can't discriminate between alcohol or food or clothing or any other commodity that's sold in the market.... [T]he intent of the legislation is to treat them all equally."[28] Senator Eliason later stated that

[t]he only limitations we're placing on local government is the fact that they cannot take a specific sales tax on a specific industry. What we're saying is that if you want to tax liquor and whatever else you might want to tax, that's alright. But we want to—it's keeping any specific industry—going out and point and saying, "We're going to tax you and no one else." ... They can ... impose a ten percent tax on liquor and tobacco—that wouldn't be in violation of this provision.... If the proposition read, "Shall we have a ten percent tax on tobacco only?" they couldn't under this provision.[29]

Senator Eliason's interpretation finds support in the Senate Finance Committee testimony of Tamara Cook, the legislative affairs committee staff member who drafted the legislation. Cook testified that "[a]s I read this language, if a municipality, whether it be a city or a borough, in fact imposed a sales tax on anything other than alcohol, it would be free to then also include alcohol within its sales tax structure."[30]

According to the committee minutes, Senator Kerttula shared this view:

Senator Kerttula advised of his understanding that under the proposed provision a tax could be imposed by a municipality if two or more things were taxed. One commodity, however, cannot be selected for taxation. Senator Eliason concurred in the foregoing understanding, noting that the amendment attempts to avoid zeroing in on one specific industry for a specific tax.[31]

Moreover, our case law supports the conclusion that a sales tax imposed on a single other source satisfies the requirements of AS 04.21.010(c). In *Lagos* we considered whether AS 04.21.010(c) prohibited the taxation of sales of alcoholic beverages at a higher rate than the rate for sales of other commodities.[32] We stated in dictum that "the legislature intended [AS 04.21.010(c)(2) ] to prohibit the imposition of discriminatory sales taxes ... in the form of ... a sales tax imposed *solely* on the sale of alcoholic beverages."[33] This statement, although not controlling here, reflects an understanding that AS 04.21.010(c)(2) only requires a sales tax on a single other source before a borough may impose a sales tax on alcoholic beverages. We therefore conclude here that a tax on a single other source satisfies the requirements of AS 04.21.010(c).

### 2. The borough's "room tax" satisfies the requirement of AS 04.21.010(c)(2).

■ The borough charges an eight percent sales tax on hotel and motel room rental transactions.[34] In *City of Homer v. Gangl*, we held that a similar "bed tax" was a sales tax.[35] We relied on the inclusion of the term

26. *See id.* at 643 n. 3 (citing Senate Finance Comm. Proceedings, May 7, 1985 (testimony of Senator Eliason) and Senate Finance Comm. Proceedings, May 8, 1985 (testimony of Senator Ray)).

27. *See* ch. 74, § 20, SLA 1985.

28. *Lagos*, 823 P.2d at 644 (quoting Senate Finance Comm. Proceedings, May 8, 1985 (testimony of Senator Eliason)).

29. *Id.*

30. *Id.* at 644 n. 4 (quoting Senate Finance Comm. Proceedings, May 7, 1985 (testimony of Tamara Cook)).

31. Senate Finance Comm. Minutes, May 8, 1985.

32. *Lagos*, 823 P.2d at 642.

33. *Id.* at 645 (emphasis added).

34. FNSBO 3.58.020(A).

35. *City of Homer v. Gangl*, 650 P.2d 396, 398–99 (Alaska 1982).

"rents" in AS 29.53.415 (the predecessor to AS 29.45.650(a)) in concluding that the term "sales tax" included a tax on "commercial sleeping accommodations." [36]

ICHRRA argues that the borough's room tax does not satisfy the requirement of AS 04.21.010(c)(2) that sales taxes be "imposed *on other sales* within the municipality." (Emphasis added.) ICHRRA argues that only a tax on a "commodity" may satisfy this requirement. Black's Law Dictionary defines "sale" as "[t]he transfer of property or title for a price." [37] Alaska Statute 29.45.650(a) authorizes municipalities to levy a "sales tax on sales, rents, and on services." This can be read as seemingly distinguishing among sales taxes on these sources. But more broadly, it can be read as eliminating distinctions among sales, rents, and services by explicitly characterizing a municipal tax on rents and services as a "sales tax." Arguably, AS 04.21.010(c)(2)'s use of "on other sales" would be meaningless if the legislature did not intend to differentiate between sales taxes on "sales, rents, and on services" in defining the type of additional "sales tax" required to justify a sales tax on alcohol.[38] According to this reading, a sales tax on a "rent" or a "service" could not be an "enabling" sales tax under AS 04.21.010(c)(2).

But we are not persuaded that the nondiscrimination principle embodied in AS 04.21.010(c)(2) requires that the other sales tax be imposed on a transaction involving the transfer of property or title. The distinction between transactions involving the exchange of money for goods and transactions involving the exchange of money for services or the occupancy or use of property in the context of AS 29.45.650(a) is not always clear.[39] For example, the "sale" of an alcoholic beverage at a bar or restaurant includes a "service" component when the bartender or server prepares and serves the drink. Moreover, it seems logical to conclude that AS 29.45.650(a)'s broad characterization of sales taxes as including taxes on both rent and services should help guide us in determining whether a tax satisfies subsection .010(c)(2).

Nor has ICHRRA directed us to any legislative history that persuades us that distinctions among sales, rents, and services should be read into AS 04.21.010(c)(2). As noted above, Senator Eliason mentioned sales taxes on various commodities as examples of sales taxes that would satisfy AS 04.21.010(c)(2), but he emphasized that "[t]he only limitations we're placing on local government is the fact that they cannot take a specific sales tax on a specific industry. What we're saying is that if you want to tax liquor *and whatever else you might want to tax,* that's alright." [40] And Tamara Cook's Senate Finance Committee testimony that "if a municipality ... imposed a sales tax *on anything other than alcohol,* it would be free to then also include alcohol within its sales tax structure" [41] supported this interpretation. These comments reflect a legislative intent to grant municipalities wide discretion in complying with AS 04.21.010(c)(2).

---

**36.** *Id.* at 398.

**37.** BLACK's LAW DICTIONARY 1337 (7th ed.1999).

**38.** *See City of St. Mary's v. St. Mary's Native Corp.*, 9 P.3d 1002, 1008 (Alaska 2000) (noting that we interpret statutes "so that no part will be inoperative or superfluous, void or insignificant").

**39.** Black's Law Dictionary defines "service" as "[t]he act of doing something useful for a person or company for a fee" and "[a]n intangible commodity in the form of human effort, such as labor, skill, or advice." BLACK's LAW DICTIONARY 1372 (7th ed.1999). It defines "rent" as "[c]onsideration paid, usu. periodically, for the use or occupancy of property." *Id.* at 1299.

**40.** *Lagos v. City & Borough of Sitka*, 823 P.2d 641, 644 (Alaska 1991) (quoting Senate Finance Comm. Proceedings, May 8, 1985 (testimony of Senator Eliason)) (emphasis added). Senator Eliason's comments were made approximately three years after we decided *Gangl*, 650 P.2d 396 (Alaska 1982). We presume that Senator Eliason and the other legislators were aware of our reliance on the inclusion of the term "rents" when we concluded that the city's "bed tax" was a sales tax within the meaning of AS 29.53.415, the predecessor to AS 29.45.650(a). *See id.* at 398. We therefore interpret these statements as rejecting fine distinctions among sales taxes on sales, rents, and services for the purposes of AS 04.21.010(c).

**41.** *Lagos*, 823 P.2d at 644 n. 4 (quoting Senate Finance Comm. Proceedings, May 7, 1985 (testimony of Tamara Cook)) (emphasis added).

In light of this evidence of legislative intent, we decline to import into AS 04.21.010(c) the distinction among "sales, rents, and . . . services" suggested by one possible reading of AS 29.45.650(a). Given the constitutional command to give a "liberal construction . . . to the powers of local government units,"[42] we cannot say that the qualifying sales tax under AS 04.21.010(c) must be imposed on a "commodity."

ICHRRA also argues that the room tax is not an areawide tax because it exempts "[o]perators located within the city of Fairbanks."[43] ICHRRA asserts that because the room tax is invalid as a nonareawide tax prohibited by AS 29.35.150, it cannot serve as the "enabling" tax under AS 04.21.010(c)(2).

But like the sales tax on alcoholic beverages at issue in this case, the room tax operates throughout the borough, subject to an exemption to the extent the same transactions are taxed by the City of Fairbanks.[44] For the reasons discussed above in Part III.B, the room tax is "areawide" within the meaning of AS 29.35.150. The borough's room tax therefore satisfies the requirement of AS 04.21.010(c)(2). Because the borough imposes a valid sales tax on another source, its sales tax on alcoholic beverages does not violate AS 04.21.010(c)(2).

**D. The Superior Court Did Not Abuse Its Discretion by Refusing To Find that ICHRRA Was the Prevailing Party Under the Catalyst Theory.**

 *DeSalvo v. Bryant* held that the catalyst theory can be an appropriate method for determining prevailing party status for attorney's fees purposes when a lawsuit brings about relief in a manner other than formal judgment.[45] To establish prevailing party status under the catalyst theory, a party must demonstrate (1) that it achieved the goal of the litigation by succeeding "on any significant issue which achieves some of the benefit sought in bringing the suit," and (2) that there is a causal connection "between the defendant's action generating relief and the lawsuit."[46] Once the party makes this prima facie showing, the opposing party may demonstrate that the "lawsuit lacked colorable merit or that the defendant's action was wholly gratuitous."[47]

 ICHRRA argues that because the borough before the election substituted Ordinance 2003–52 for Ordinance 2003–46 the superior court abused its discretion in refusing to declare ICHRRA the prevailing party. The superior court found that ICHRRA had not prevailed on a "significant issue."

ICHRRA initially challenged the proposed implementing ordinance contained in Section 3 of Ordinance 2003–46. This implementing ordinance would have become effective if borough voters had approved the tax as proposed by Ordinance 2003–46. Ordinance 2003–52 did not include the proposed implementing ordinance set out in Section 3 of Ordinance 2003–46. Instead, Ordinance 2003–52 called for the borough assembly to "adopt an implementing ordinance." We cannot say that the superior court abused its discretion in finding that ICHRRA was not successful in a significant issue despite the borough's adoption of this change.

ICHRRA also points out that Ordinance 2003–52 omits from the ballot question the representation that the proposed sales tax on alcoholic beverages would "reduc[e] the property tax dollar for dollar." ICHRRA's original complaint catalogues various alleged problems with Ordinance 2003–46's ballot question, but does not mention the quoted language. Nor does the quoted language appear in ICHRRA's memorandum in sup-

---

42. Alaska Const. art. X, § 1.

43. FNSBO 3.58.030(B).

44. FNSBO 3.58.030(B)(3) states that operators within the City of Fairbanks are exempt from the room tax except that

> [i]f the city of Fairbanks imposes a room tax less than the borough's, operators in the city of Fairbanks shall collect the borough room tax

> imposed by this chapter and remit the taxes to the borough. The borough will then remit to the city of Fairbanks its portion of the tax.

45. *DeSalvo v. Bryant*, 42 P.3d 525, 530 (Alaska 2002).

46. *Id.* at 530.

47. *Id.*

port of its unsuccessful motion for a preliminary injunction. ICHRRA seems to have objected to this language for the first time in its reply memorandum in support of its motion for a preliminary injunction. This indicates that ICHRRA did not view the inclusion or omission of these words as particularly important.

Moreover, although ICHRRA certainly opposed specific language of the ballot question in Ordinance 2003–46, this issue was peripheral to its main contention that the proposed tax violated AS 29.35.150 and AS 04.21.010(c)(2). We therefore cannot say that the superior court abused its discretion in finding that ICHRRA did not prevail on a significant issue in the litigation.[48]

We recently held in *Halloran v. State, Division of Elections* that it is generally inappropriate to invoke the catalyst theory when legislative action moots the lawsuit and provides the relief sought.[49] Because courts are not well-positioned to divine post-litigation legislative motivation, the catalyst approach should be applied only when "the very clearest expression of legislative purpose" is present.[50] ICHRRA notes that chronology of events ordinarily plays an important role in establishing causation for catalyst theory purposes.[51] To establish a causal connection "between the [borough's] action generating relief and the lawsuit," [52] ICHRRA therefore emphasizes the enactment of Ordinance 2003–52 while ICHRRA's motion for a preliminary injunction was pending. Because we decided *Halloran* after appellate briefing was completed in this case, we assume ICHRRA could not have anticipated a need to present more direct evidence of legislative motivation. But the superior court's deter-

mination that ICHRRA was not the prevailing party because it did not succeed on a significant issue was not "manifestly unreasonable," [53] so it is unnecessary to remand to allow ICHRRA to gather and present any potential evidence of legislative motivation.

## IV. CONCLUSION

The judgment of the superior court is therefore AFFIRMED.

FABE and CARPENETI, Justices, not participating.

MATTHEWS, Justice, concurring.

I have some difficulty with the court's interpretation of AS 04.21.010(c)(2). In its original form the statute required local governments to tax "other sales" when they taxed alcohol sales. I would have construed this provision to mean that local governments needed to tax the sales of a substantial number of other commodities in order to satisfy the "other sales" requirement. The evident purpose of the requirement was to prevent excessive and discriminatory taxation of alcohol sales. Because alcohol is often abused, causing numerous societal problems that are costly for local governments, it is an easy and logical target for differential taxation. The "other sales" language aimed to constrain taxes on alcohol by requiring the same tax on the sales of other commodities.[1] If the tax rate were set too high consumers of the other commodities would voice their protests to their elected representatives. But this constraint could only be potentially effective if the sales of a number of commodities consumed by the voting public were taxed.[2]

---

48. This conclusion renders it unnecessary to consider whether AS 09.60.010(b), which prohibits discrimination in the award of attorney's fees based on the factors that we have used to determine public interest litigant status, applies to this case.

49. *Halloran v. State, Div. of Elections,* 115 P.3d 547, 552 (Alaska 2005).

50. *Id.*

51. *See DeSalvo,* 42 P.3d at 530.

52. *Id.*

53. *Jerue v. Millett,* 66 P.3d 736, 740 (Alaska 2003).

1. In *Lagos v. City & Borough of Sitka,* 823 P.2d 641, 645 (Alaska 1991), we concluded, in line with this purpose, that AS 04.21.010(c)(2) requires that the alcohol sales tax rates "not exceed the rate of taxation imposed upon ... other commodities sales."

2. Taxes on commodities or services mostly consumed by nonresidents would not comport with the rationale of the statute, because nonresidents are not directly represented on municipal assemblies.

The "other sales" language was deleted accidently and five years later it was reenacted in substantially the same terms.[3] The rule of statutory interpretation that a statute, and each part of a statute, is presumed to serve some useful purpose [4] argues for interpreting the new statute as I would have interpreted the original one. But the legislative history points in a different direction. As the opinion of the court explains, the staff member who drafted the new statute, and some members of the Senate Finance Committee who reviewed it, including a co-sponsor, expressed the view that the new statute could be complied with by taxing just one additional commodity.

It is tempting to say that this history should not be dispositive. Many of the criticisms leveled against reliance on legislative history seem to apply here.[5] The full Senate was not necessarily aware of the colloquy in committee and did not necessarily agree with the interpretation offered there. The same is true with respect to the House of Representatives, which concurred in the passage of the statute, and the Governor, who decided not to veto it. Further, those who must comply with the statute, and those seeking its enforcement, are charged only with that notice which the text of the act gives them, not that which can be gleaned from the legislative history.

This court, however, has given considerable weight to legislative history. Indeed, we rejected similar arguments against the use of legislative history in *Lagos v. City & Borough of Sitka.*[6] There we concluded, based on the same committee proceedings referred to here, that AS 04.21.010(c)(2) prohibits differential rates of sales taxes on alcohol and

---

3. This history is detailed in *Lagos,* 823 P.2d at 643–44.

4. *See Municipality of Anchorage v. Sisters of Providence in Washington, Inc.,* 628 P.2d 22, 29 (Alaska 1981), *rejected on other grounds by Alaska Public Employees Ass'n v. City of Fairbanks,* 753 P.2d 725 (Alaska 1988).

5. Justice Scalia, a frequent critic, has questioned whether legislative history accurately reflects legislative intent. He contends that

> it is a fiction of Jack–and–the–Beanstalk proportions to assume that more than a handful of those Senators and Members of the House who voted for the final version of the [legislation], and the President who signed it, were, when they took those actions, aware of the drafting evolution that the Court describes; and if they were, that their actions in voting for or signing the final bill show that they had the same "intent" which that evolution suggests was in the minds of the drafters.

*Bank One Chicago, N.A. v. Midwest Bank & Trust Co.,* 516 U.S. 264, 279, 116 S.Ct. 637, 133 L.Ed.2d 635 (1996) (Scalia, J., concurring). Justice Scalia has also raised notice-based concerns about relying on legislative history, remarking that

> [i]t may well be true that in most cases the proposition that the words of the United States Code or the Statutes at Large give adequate notice to the citizen is something of a fiction, albeit one required in any system of law; but necessary fiction descends to needless farce when the public is charged even with knowledge of Committee Reports.

*United States v. R.L.C.,* 503 U.S. 291, 309, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992) (Scalia, J., concurring) (citation omitted).

While Justice Scalia wrote alone in *Bank One* and was joined only by Justices Thomas and Kennedy in his *R.L.C.* concurrence, a number of commentators have noticed a marked decline in the Supreme Court's use of legislative history since Justice Scalia joined the court. *E.g.,* James J. Brudney & Corey Ditslear, *The Decline and Fall of Legislative History? Patterns of Supreme Court Reliance in the Burger and Rehnquist Eras,* 89 Judicature 220, 222 (2006); Michael H. Koby, *The Supreme Court's Declining Reliance on Legislative History: The Impact of Justice Scalia's Critique,* 36 Harv. J. on Legis. 369, 385–87 (1999). *But see* Charles Tiefer, *The Reconceptualization of Legislative History in the Supreme Court,* 2000 Wis. L.Rev. 205 (2000).

Indeed, the voting alignment in the recent *City of Rancho Palos Verdes v. Abrams* case suggests that most members of the court may be moving away from a traditional reliance on legislative history. 544 U.S. 113, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005). Justice Scalia, the author of the opinion of the court, looked only to the statute's text, and its "express or implicit" indications, for interpretative guidance. *Id.* at 1459. By contrast, Justice Breyer, joined by Justices O'Connor, Souter, and Ginsburg, advocated examination of "context, not just literal text," as a guide "to Congress' intent in respect to a particular statute." *Id.* at 1462. Only Justice Stevens counseled examination of "all relevant evidence," including not only text and the "structure of the statutory scheme" but also legislative history, to ascertain Congressional intent. *Id.* at 1463 (Stevens, J., concurring in the judgment).

6. 823 P.2d at 644–45.

other commodities.[7] We have stated that when legislative history is sufficiently clear it can alter what might otherwise appear to be the plain meaning of the statutory language.[8] Here the interpretation suggested by the legislative history is not inconsistent with the language of the statute. Troublingly, it does go a long way towards nullifying the act's effectiveness in municipalities that have not found it necessary to impose a general sales tax.

Based on our general approach to legislative history, the specificity of the legislative history in this case, and the fact that the interpretation supported by the history is consistent with the literal language of the act, I concur, hesitantly, with today's opinion as to the meaning of AS 04.21.010(c)(2). I agree without reservation to the opinion's resolution of all other points.

---

7. *Id.* at 643–45.

8. A typical statement of our approach is found in *Homer Electric Ass'n v. Towsley,* 841 P.2d 1042, 1043–44 (Alaska 1992):

Generally, the most reliable guide to the meaning of a statute is the words of the statute construed in accordance with their common usage. *Lagos v. City & Borough of Sitka,* 823 P.2d 641, 643 (Alaska 1991). However, even where the statutory language considered alone seems to leave room reasonably for only one meaning, we nonetheless may consult legislative history and the rules of statutory construction, realizing that sometimes language that seems clear in the abstract takes on a different meaning when viewed in context. *North Slope Borough v. Sohio Petroleum Corp.,* 585 P.2d 534, 540 (Alaska 1978); *State v. Alex,* 646 P.2d 203, 208 n. 4 (Alaska 1982). In such cases the legislative history and rules of construction must present a compelling case that the literal meaning of the language of the statute is not what the legislature intended. *University of Alaska v. Geistauts,* 666 P.2d 424, 428 n. 5 (Alaska 1983) ("Where a statute's meaning appears clear and unambiguous, ... the party asserting a different meaning has a correspondingly heavy burden of demonstrating contrary legislative intent."); *State v. Alex,* 646 P.2d at 208 n. 4 (under Alaska's sliding-scale approach to statutory interpretation, the more plain the language of the statute the more convincing the evidence of contrary legislative intent must be).